UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    : 17-CR-115(CBA)
                             :
                             :
                             :
     -against-               : United States Courthouse
                             : Brooklyn, New York
                             :
                             :
                             :
EDGAR VEYTIA,                : Monday, April 10, 2017
                             : 2:00 p.m.
     Defendant.              :
                             :
                             :
- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE CAROL B. AMON
SENIOR UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:    BRIDGET M. ROHDE, ESQ.
                       United States Attorney
                       Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                       BY: CRAIG HEEREN, ESQ.
                           RYAN HARRIS, ESQ.
                           Assistant United States Attorneys

For the Defendant:     GRETCHEN CHRISTINA VON HELMS
                       ATTORNEY AT LAW
                       Attorney for the Defendant
                            105 West "F" Street, Third floor
                            San Diego, California 92101
                       BY: GRETCHEN VON HELMS, ESQ.

Court Reporter:  Angela Grant, RPR, CRR
                 Official Court Reporter


Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

1            (In open court at 2:13 p.m.)
2            (Defendant present in open court.)
3            COURTROOM DEPUTY:  The United States against
4   Veytia.
5            Please state your appearances for the record.
6            MR. HEEREN:  Craig Heeren on behalf of the United
7   States.  With me is my colleague Ryan Harris.
8            Good afternoon, Your Honor.
9            THE COURT:  Good afternoon.
10           MS. VON HELMS:  Good afternoon, Your Honor.
11           Gretchen Von Helms on behalf of Mr. Edgar Veytia
12  who is present before the Court in custody.
13           THE COURT:  All right.  Good afternoon.
14           Please be seated.
15           Ms. Von Helms, I have an application from you.  I
16  think we need to take that up first, to appear pro hac vice.
17           MS. VON HELMS:  Yes, Your Honor.  It would be my
18  motion to appear in front of Your Honor for the purposes of
19  this case pro hac vice.  I have E-filed that motion for Your
20  Honor and paid the appropriate fees to have that motion be
21  in front of Your Honor.
22           THE COURT:  All right.  Was the magistrate judge
23  at arraignment aware that you weren't admitted?
24           MS. VON HELMS:  The magistrate judge was aware
25  that I was in the process of obtaining the pro hac vice

1 application. He was in San Diego on Friday, this last
2 Friday he was in San Diego, and we appeared for him because
3 we are admitted to practice in San Diego in federal district
4 court. In fact, I had clerked there for a federal district
5 court judge.
6 And then he was airlifted Friday night into
7 Saturday morning. We were told we must appear Saturday
8 morning for his first appearance. So, obviously, I did not
9 have -- over the weekend I couldn't submit the
10 documentation. So His Honor was aware that it was -- we
11 were in the process of getting that paperwork in. So I made
12 a special appearance courtesy, a courtesy to appear so that
13 I could appear in front of Your Honor today with the proper
14 pro hac vice paperwork.
15 THE COURT: All right. I've looked at the
16 paperwork and I'll approve the application.
17 Let me ask though --
18 MS. VON HELMS: Thank you, Your Honor.
19 THE COURT: -- are you going to have difficulty
20 representing this defendant coming back and forth from
21 California?
22 MS. VON HELMS: No, Your Honor, I will not.
23 THE COURT: Now, I also understand that because of
24 problems with some equipment, that the arraignment procedure
25 before the magistrate actually took place over the

1  telephone; is that correct?

2              MR. HEEREN:  That's correct, Your Honor.

3              THE COURT:  Did defendant consent to that?

4              MS. VON HELMS:  Your Honor, he did.

5          We were advised of the nature of the video

6  conference not properly functioning; that it was all right

7  for the magistrate to proceed way of telephonic arraignment,

8  otherwise, the magistrate was happy to immediately appear as

9  quickly as he could physically be present in the courtroom.

10 We waived that physical appearance.  My client was so

11 advised and he so waived.

12             If Your Honor wishes me to re-arraign him in front

13 of Your Honor just to button down the hatches shall we say,

14 I'm happy to do that at this time.

15             THE COURT:  All right.  Well, let me ask.

16             First of all, there is the indictment and it

17 contains three counts and a forfeiture allegation.

18             How do you pronounce the defendant's name?

19             MS. VON HELMS:  Veytia.

20             THE COURT:  Mr. Veytia, do you read English?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you read your indictment?

23             THE DEFENDANT:  Yes, I did.

24             THE COURT:  Did your lawyer explain to you what

25 the charges are in the indictment?

1    THE DEFENDANT: Yes.

2    THE COURT: Do you wish for me to read the
3 indictment to you now or are you satisfied that you
4 understand it?

5    THE DEFENDANT: I'm satisfied and I do understand.

6    THE COURT: Counsel, have you talked to him about
7 waiving his right to reading the entire indictment?

8    MS. VON HELMS: I have, Your Honor, and he so
9 waives.

10   THE COURT: And what is his plea?

11   MS. VON HELMS: Your Honor, his plea at this time
12 is not guilty.

13   THE COURT: Okay. You can be seated.

14   I notice, Mr. Veytia, that you have an interpreter
15 sitting next to you, but is that for the purposes of just
16 assisting you if you don't understand a word or two?

17   THE DEFENDANT: Yes. For, for any questions I can
18 have.

19   THE COURT: But you do speak English?

20   THE DEFENDANT: Yes, I do.

21   THE COURT: Do you understand everything the Court
22 has said so far?

23   THE DEFENDANT: Yes, I did. Yes.

24   THE COURT: Okay. You can be seated again.

25   MS. VON HELMS: Just to clarify, Your Honor. He

1  was educated in the United States from five years of age up
2  through junior high school.  He then received some education
3  in Mexico, back to some education in the United States.  So
4  his English is fairly proficient, but syntax might be a
5  little off when he replies to Your Honor.  It might not be
6  perfect standard English so that's why we have the
7  interpreter as backup in case you have a question or in case
8  his syntax doesn't come across and you wish to clarify
9  something for him in Spanish that that person would be
10 available for Your Honor to make sure that comes across
11 clearly.
12          THE COURT:  Okay.  Fine.
13          I just need to set some schedules here.  Do you
14 intend to make motions here, Ms. Von Helms?
15          MS. VON HELMS:  I will at some point, yes.  At
16 this point I don't have any discovery yet and we're working
17 on the usual motions here, the usual course of action I'll
18 receive that, and I'll be able to review the material and
19 then make the appropriate motions, if there are any to be
20 made.
21          THE COURT:  What's the government's application in
22 connection with this case?
23          MR. HEEREN:  Your Honor, I think defense counsel
24 accurately states things.  We're, obviously, very early on
25 in the case.  We're going to reach out and have the ordinary

1  conversations about whether this can be resolved in lieu of
2  trial. If not, we'll, of course, turn over discovery
3  pursuant to our Rule 16 obligations. And we expect that
4  this is a fairly substantial case that will involve
5  substantial discovery. So if and when it gets to that
6  point, I expect that discovery will be somewhat complicated.
7      So in light of both future possible plea
8  negotiations and because of the need for trial counsel to
9  review discovery in the future, we would request an order of
10 excludable delay from now until approximately 45 days from
11 now, either the end of May or the beginning of June.
12     THE COURT: Do you join in that application,
13 counsel?
14     MS. VON HELMS: Yes, indeed I do, Your Honor. It
15 is a complicated case. It is a large high-profile case and
16 I expect that due to its complication and the voluminous
17 discovery that would need to be reviewed, that I would need
18 that time to prepare.
19     THE COURT: Are you also considering any plea
20 offers or plea negotiations during this time period?
21     MS. VON HELMS: Of course, Your Honor. I would be
22 remiss not to look at all appropriate resolutions to the
23 case in my duty to represent my client fully so I would
24 obviously speak with them.
25     THE COURT: Do you agree that based on the

1  concerns that have been raised, in particular the fact that
2  there are ongoing plea discussions, that it is appropriate
3  to exclude time under the Speedy Trial Act between now and
4  the next court appearance?
5              MS. VON HELMS:  I do concur.  I have advised my
6  client of his right to a speedy and public trial, and he
7  also concurs on the waiver of time.
8              THE COURT:  Is that correct, Mr. Veytia?
9              THE DEFENDANT:  Yes, my Honor.
10             THE COURT:  Well, I grant the application to put
11 the case over for 45 days, but I'm expecting at the end of
12 that time period that at least on the plea part of it, if
13 there's going to be a disposition, that the parties be ready
14 to decide that because if that's not the course the case is
15 going to take, then we need to do other scheduling.  So that
16 decision should be made within this time period.
17             So, Ms. Holley, do we have a date?
18             COURTROOM DEPUTY:  Did you say the end of May?
19             THE COURT:  What's 45 days?
20             COURTROOM DEPUTY:  Two weeks in April and the
21 month of May, Judge.
22             MS. VON HELMS:  It would be possible, Your Honor,
23 to do that to -- May 31st is -- I think it's a holiday of
24 some sort.  Would it be possible to have -- I don't know if
25 Your Honor sets Mondays or Fridays.  Do you have a specific

1  day that you like?

2              COURTROOM DEPUTY:  May 31st is not a holiday.

3              MR. HEEREN:  I think it's the 29th is the holiday

4  this year.

5              MS. VON HELMS:  I'm not sure when it is.

6              Would it be possible to have that Friday, June 2nd

7  or June 1st?

8              THE COURT:  No, that doesn't work.

9              MS. VON HELMS:  Or the 5th of June?

10             Do you do these Mondays normally?

11             COURTROOM DEPUTY:  What about May 30th?

12             MR. HEEREN:  I think the only concern -- I mean,

13  obviously, the government will appear whenever necessary,

14  but it's the day after Memorial Day which I think ends up

15  being difficult with peoples --

16             THE COURT:  Is that a --

17             COURTROOM DEPUTY:  That's a Tuesday.

18             MS. VON HELMS:  That's a holiday, Your Honor, so

19  the flights are difficult.

20             THE COURT:  What about Wednesday?  What's

21  Wednesday?

22             COURTROOM DEPUTY:  Wednesday is the 31st, Judge.

23             MS. VON HELMS:  Would it be possible, Your Honor,

24  to have -- you can obviously tell me no -- because I'll be

25  flying in over the week, I'd like, if possible, to do that

1  on Monday, June 5th.
2             Would that work for Your Honor?
3             COURTROOM DEPUTY:  It would, Judge.
4             THE COURT:  June 5th works?
5             COURTROOM DEPUTY:  Yes, Judge.
6             THE COURT:  We'll put it down for June 5th then.
7             COURTROOM DEPUTY:  At 10:30.
8             MR. HEEREN:  That's fine.  Thank you.
9             MS. VON HELMS:  Thank you, Your Honor.
10            May I make another --
11            THE COURT:  First of all, let me just indicate
12 that I'm excluding time under the Speedy Trial Act between
13 now and the next court appearance in the interest of
14 justice, in part, because I'm told that there are the
15 routine plea discussions, negotiations that will take place,
16 and I think it's in the defendant's interest to have an
17 opportunity to consider that before going to the time and
18 expense of reviewing discovery or making motions.  So I
19 think it's in his interest and I think it's in the public's
20 interest as well so I'll exclude time.
21            Is there some other issue you wish to raise,
22 Ms. Von Helms?
23            MS. VON HELMS:  Yes, Your Honor.  The magistrate
24 did enter an order after a pretrial services interview of my
25 client.  He does have a medical issue, and that he be seen

1  and that he be given the appropriate medication.  He came
2  with them when he was airlifted, the medication from the
3  Metropolitan Correctional Center in San Diego.  However,
4  when he arrived at the MDC, the staff there took his
5  medication from him and have yet to have a doctor see him or
6  provide him any new medication.
7              THE COURT:  What kind of medication is it?
8              MS. VON HELMS:  It is --
9              THE DEFENDANT:  Fiber pills.
10             MS. VON HELMS:  They're fiber pills.
11             THE COURT:  That's over-the-counter materials,
12 right?
13             MS. VON HELMS:  I understand there's a drink and
14 then he has a prescribed medication that was listed in
15 his -- oh, I'm sorry, Your Honor, in his pretrial services
16 report on page 2, at the bottom of page 2.  So the
17 magistrate did go ahead and issue an order requesting that
18 the MDC and/or the marshals provide -- get him to a doctor
19 and provide him with the appropriate -- because it's a
20 painful stomach condition and acid reflux with the
21 gastritis, so it's a painful condition.  It's easily
22 treatable when given the appropriate over-the-counter
23 medication I agree with Your Honor, but he does need to be
24 seen and to have -- since he can't go to a pharmacy where
25 he is, he would need to be provided those.

1     THE COURT:  I thought when someone first came to
2  the facility, they did a physical and they met with the
3  doctor.  I guess it's because it was over the weekend.
4     MS. VON HELMS:  Right.  I just -- I'm not sure if
5  Your Honor wanted to followup.  So the magistrate did make
6  the order and it just hasn't been done yet.  I can give you
7  the status later if you want to reaffirm the magistrate's
8  order that he does get to be seen and treated.
9     THE COURT:  Well, no.  I mean, of course I'll
10 reaffirm the order.
11    MR. HEEREN:  The government will reach out to
12 counsel at the Bureau of Prisons who handle this sort of
13 matter.  I think Your Honor is right.  I think they do
14 ordinarily do an initial check-in.  I don't know if it just
15 hasn't happened yet, I don't know why, but we'll look into
16 it.
17    THE COURT:  But the order went to the facility?
18    MR. HEEREN:  Yes.  I know the marshal
19 specifically took it.
20    THE COURT:  All right.  You can advise me if it's
21 not taken care of, but.
22    MS. VON HELMS:  Thank you, Your Honor.
23    THE COURT:  See how it goes.
24    All right.  Anything else?
25    MS. VON HELMS:  That's all, Your Honor, we have at

1  this time.
2           THE COURT:  Okay.
3           MR. HEEREN:  No, Your Honor.  Thank you.
4           (Proceedings adjourned at 2:26 p.m.)

ANGELA GRANT, RPR, CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter*
/s/ Angela Grant    April 21, 2017