

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MPR:RCH/CRH            *271 Cadman Plaza East*
F. #2015R02080        *Brooklyn, New York 11201*

September 19, 2019

By ECF

The Honorable Carol B. Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

         Re:     United States v. Edgar Veytia
                     Criminal Docket No. 17-115 (CBA)

Dear Judge Amon:

       The government respectfully submits this letter in advance of the defendant's sentencing scheduled for September 26, 2019, at 10:00 a.m. On January 4, 2019, the defendant pled guilty to Count One of the indictment, which charged the defendant with participating in an international heroin, cocaine, methamphetamine and marijuana manufacture and distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 959(d). See Dkt. Nos. 1, 74. In this memorandum and in a supplemental sentencing submission, the government sets forth certain factors to be considered by the Court at sentencing pursuant to 18 U.S.C. § 3553(a), and respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). The government agrees that the statutory mandatory minimum sentence for this defendant is 10 years, and that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") recommendation is life imprisonment.

    I.      Background

       Since approximately 2013, the Drug Enforcement Administration ("DEA") has been conducting an investigation into a violent Mexican drug trafficking organization, known as the H-2 Cartel, that was previously lead by Juan Francisco Patron Sanchez, also known as

"H-2," and was based in Nayarit and Sinaloa, Mexico.[1]  See Presence Investigation Report ("PSR") ¶ 4.  During the course of this investigation, DEA agents learned that the H-2 Cartel had numerous distribution cells in the United States, including in Los Angeles, Las Vegas, Ohio, Minnesota, North Carolina and New York.  See PSR ¶ 5.  DEA agents also determined that the H-2 Cartel was distributing substantial quantities of various illegal narcotics throughout the United States.  The government estimates that, during the relevant time period of the conspiracy charged in the indictment, the H-2 Cartel distributed on a monthly basis approximately 500 kilograms of heroin, 100 kilograms of cocaine, 200 kilograms, and 3,000 kilograms of marijuana and earned millions of dollars in illegal proceeds.  See PSR ¶ 5.  Additionally, the H-2 Cartel was also involved in the possession and use of firearms, and substantial violence including torture and dozens of homicides.

During the relevant time period, the defendant was the State Attorney General for the State of Nayarit, Mexico, responsible for overseeing Mexican law enforcement authorities investigating criminal activity in Nayarit.  See PSR ¶ 6.  During his tenure as State Attorney General, the defendant assisted the H-2 Cartel in exchange for bribes.  See id.  The defendant was paid bribes on a monthly basis and provided official sanction for the H-2 Cartel to engage in drug trafficking in Nayarit.  See id.  Further, the defendant directed other corrupt Mexican law enforcement officers he oversaw to assist the H-2 Cartel and used those officers to pass messages to and from Patron Sanchez, the then-leader of the H-2 Cartel.  See id.

In exchange for monthly bribes, the defendant provided various additional forms of assistance to the H-2 Cartel, including by releasing members and associates of the H-2 Cartel from prison after they had been arrested for drug trafficking, weapons possession or other criminal conduct.  See PSR ¶ 7.  Similarly, the defendant, at the direction of Patron Sanchez and the H-2 Cartel, instructed corrupt Mexican law enforcement officers to target rival drug traffickers in Nayarit for wiretaps and arrests, which permitted the H-2 Cartel to expand without competition.  See id.  The defendant fed information obtained from these wiretaps to the H-2 Cartel for their exploitation.

In addition, the defendant assisted the H-2 Cartel in covering up a murder committed by its members on at least one occasion in October 2015.  See PSR ¶ 8.  In that case, Patron Sanchez instructed members of the H-2 Cartel to kidnap a rival drug trafficker, and they killed the drug trafficker.  Patron Sanchez informed the defendant of the murder and solicited his assistance in covering it up, to which the defendant agreed.  See id.  The evidence gathered during the course of the investigation also reflects that the defendant agreed to authorize acts of violence for the H-2 Cartel.  See PSR ¶ 10.  On several occasions, Patron Sanchez and the defendant discussed "processing," or committing violent acts against, rival drug traffickers detained by corrupt Mexican law enforcement officers controlled by the defendant.  See id.  For example, on March 15, 2016, the defendant advised Patron Sanchez that he was going to "process" a rival drug trafficker of the H-2 Cartel, which Patron Sanchez

---

[1] Patron Sanchez and several other senior leaders of the H-2 Cartel were killed in a conflict with Mexican military personnel in February 2017.  The H-2 Cartel has continued to operate under the leadership of its surviving members.

2

was pleased with, as the rival drug trafficker was "dangerous." See id. The defendant later clarified to Patron Sanchez: "We are going to kill him." See id. On multiple other occasions, the defendant directed corrupt Mexican law enforcement officers to send rival drug traffickers arrested by law enforcement "to hell." See id.

II. Guidelines Calculation

The government submits that the Guidelines calculations set forth below should be applied:

| | |
|---|---|
| Base Offense Level (§§ 2D1.1(a)(5), 2D1.1(c)(1)) | 38 |
| Plus: Dangerous Weapon Possessed (§ 2D1.1(b)(1)) | +2 |
| Plus: Defendant Used Violence (§ 2D1.1(b)(2)) | +2 |
| Plus: Leadership Enhancement (§ 3B1.1(a)) | +4 |
| Plus: Abuse of Position of Public Trust (§ 3B1.3) | +2 |
| Less: Acceptance of Responsibility (§§ 3E1.1(a), (b)) | -3 |
| **Total Offense Level:** | **45** |

The total offense level is 45, which, based on a Criminal History Category of I, carries a Guidelines range of life imprisonment. This is the same Guidelines range and Criminal History Category calculated in the PSR. See PSR ¶¶ 17–29, 32. The defendant is also subject to a 10 year mandatory minimum term of imprisonment. See PSR ¶ 68.

In his sentencing submission, the defendant objects to the application of the two-point enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) and the two-point enhancement for the use of violence pursuant to U.S.S.G. § 2D1.1(b)(2), on the basis that these enhancements were not contained in the parties' plea agreement. See Def. Mem. at 4. It is correct that the plea agreement did not include these two enhancements in its estimated Guidelines range. The government omitted these enhancements in error. However, the plea agreement further states that the "Guidelines estimate set forth [herein] is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." The government agrees with the Probation Department that these two enhancements apply, based on the undisputed facts set forth in the PSR, see PSR ¶¶ 8–10, and the Guidelines calculation contained in the plea agreement was in error.

3

III. <u>Applicable Law</u>

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In doing so, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted). "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." <u>United States v. Sindima</u>, 488 F.3d 81, 87 (2d Cir. 2007) (quotation omitted, alterations in original). "[W]here the sentence is outside an advisory Guidelines range, the court must also state 'the specific reason' for the sentence imposed, in open court as well as in writing—'with specificity in a statement of reasons form' that is part of the judgment." <u>United States v. Aldeen</u>, 792 F.3d 247, 251-252 (2d Cir. 2015), <u>as amended</u> (July 22, 2015) (quoting 18 U.S.C. § 3533(c)(2)).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>  (2) the need for the sentence imposed –
>
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>  (B) to afford adequate deterrence to criminal conduct; [and]
>
>  (C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in most effective manner." 18 U.S.C. § 3553(a)(2)(D). "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed

4

on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts. To the extent there remain any open issues as to the correct Guidelines range, the Court should first make any necessary finding to arrive at the correct range. Nevertheless, however the Court arrives at the correct Guidelines range, it still must fashion a sentence that meets the criteria of Section 3553(a) under the specific facts of this case.

IV. Argument

Under 18 U.S.C. § 3553(a)(1), the Court, in imposing sentence, is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Here, "the nature and circumstances of the offense" are extremely serious. As previously detailed herein, the defendant provided substantial assistance to a violent drug trafficking organization, the H-2 Cartel, that trafficked thousands of kilograms of heroin, cocaine, methamphetamine and marijuana into the United States. In exchange for bribes, the defendant permitted the H-2 Cartel to operate with impunity, allowing it to transport narcotics and carry out violent retribution without consequence. The defendant not only permitted criminal activity to occur, he took affirmative steps to assist the H-2 Cartel, including by using his position to secure law enforcement tools like wiretaps for the H-2 Cartel's illegal ends, and by facilitating acts of violence and murder for the organization. The defendant's conduct is particularly serious since it was cloaked in the mantle of legal authority, and reflects a severe breach in the trust placed in him as a member of law enforcement. Any sentence imposed by the Court must reflect the seriousness of this criminal conduct.

The Court should also consider the "history and characteristics" of this defendant, which are further addressed in the defendant's sentencing memorandum. The government does not dispute that the defendant was charged with a difficult task: enforcing the law in a place where corruption was significant and providing protection to people where powerful and violent criminal organizations had the apparent ability to kill with abandon. At the same time, it is clear that the defendant made several choices that led to his life of crime: he chose a life of corruption that endangered the lives of the citizens of Nayarit. Instead of enforcing the criminal law against these drug trafficking organizations, he used the official machinery of his position to enable those organizations, including directing his inferior officers to assist the H-2 Cartel and authorizing violence on the H-2 Cartel's behalf. Nor was the defendant a hostage to his situation. As a United States citizen with a home in California, the defendant could have left his life of corruption behind at any time. Instead, he chose to stay, enable these violent drug trafficking organizations, and accept the benefits of working with these criminals.

Finally, the government agrees that the Court must consider the fact that the defendant has expressed remorse for his years of crime, as further detailed in the government's

5

supplemental sentencing submission.  The Court should consider all these factors in imposing sentence.

    V.    <u>Conclusion</u>

For the forgoing reasons, the Government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, <u>see</u> 18 U.S.C. § 3553(a)(2).

                                             Respectfully Submitted,

                                             RICHARD P. DONOGHUE
                                             United States Attorney

                               By:    <u>/s/ Ryan C. Harris</u>
                                             Ryan C. Harris
                                             Craig R. Heeren
                                             Assistant United States Attorneys
                                             (718) 254-6489/6467

cc:    Clerk of the Court (CBA) (by ECF)
        Jeffrey H. Lichtman, Esq. (by ECF)
        Jeffrey B. Einhorn, Esq. (by ECF)
        Michelle B. Malko, United States Probation Officer (by email)